UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 23-21023-CIV-ALTONAGA/Damian

**EDWIN GARRISON**, *et al.,* on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

**KEVIN PAFFRATH, GRAHAM STEPHAN, ANDREI JIKH, JASPREET SINGH, BRIAN JUNG, JEREMY LEFEBVRE, TOM NASH, BEN ARMSTRONG, ERIKA KULLBERG, CREATORS AGENCY, LLC,**

    Defendants.
_____/

**PLAINTIFFS' MOTION TO
SERVE DEFENDANT TOM NASH WITH PROCESS THROUGH ALTERNATE MEANS**

Plaintiffs, pursuant to Federal Rule of Civil Procedure 4(f)(3), request an Order authorizing Plaintiffs to serve Defendant, Tom Nash, pursuant to the "Service Plan" discussed below.

**I.**      **BACKGROUND**[1]

Defendant Tom Nash is a financial "Influencer" whose business revolves around making and posting videos online to promote products, like the unregistered FTX offerings at issue in this lawsuit, to his hundreds of thousands of followers. Kaye Decl. ¶ 2. Nash describes himself on his Verified Twitter Account, @iamtomnash, which has over 72,000 followers, as "Father, Husband, Basketball Junkie. Michigan Alum (Go Blue). Former Deloitte Senior Manager. If my profile doesn't have a blue check mark it's 100% fake!" *Id.* Nash has posted over 7,200 tweets on this account, including a video at 7:07am on May 1, 2023, about JPMorgan Chase's takeover of First Republic Bank. *Id.*

---

[1] Attached as **Exhibit 1** to this Motion is the supporting declaration of Joseph M. Kaye ("Kaye Decl."), citations to which include the referenced exhibits therein.



      *Id.* (citing https://twitter.com/iamtomnash (accessed May 1, 2028); https://twitter.com/iamtomnash/status/1652993024631136259 (accessed May 1, 2023)).

According to his primary Verified YouTube Account, @TomNashTV, which has over 284,000 followers, "Tom Nash provides opinions on the stock market, the economy and financial news. Please consider subscribing for honest and independent financial news and educational content. Views expressed in all videos are merely Tom's own opinions." Kaye Decl. ¶ 3. Nash's primary YouTube account advertises as posting "DAILY FINANCE VIDEOS" and has at the time of this declaration his videos on his channel have collectively amassed 33,913,122 views since it was established on August 15, 2017. *Id.*



*Id.* (citing https://www.youtube.com/@TomNashTV/about (accessed May 1, 2023)).

On November 13, 2022, shortly after FTX collapsed and filed for bankruptcy, Tom Nash posted a "mea culpa" video on his YouTube channel, explaining that he wanted to "come clean" to his followers about his promotion of FTX and its products. Kaye Decl. ¶ 4. In the video, titled "Let's Talk," Nash apologizes to his followers for his role in promoting FTX and its unregistered offerings, making a number of admissions, including disclosing how much he had apparently been paid by FTX. *Id.*

It appears that Nash deleted "Let's Talk" from his channels. Kaye Decl. ¶ 5.[2]

---

[2] As the Court is—and Defendants should be—well aware, "[s]poliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). "The duty to preserve relevant evidence is triggered not only when litigation

Fortunately for Plaintiffs and the Court, however, Peter Komolafe, a "Financial Adviser turned Youtuber" based in the United Kingdom, livestreamed a video on November 13, 2022, titled "HE GOT PAID 50K A MONTH TO PROMOTE FTX – This is his apology," accessible at https://www.youtube.com/watch?v=SBzcEpfUpQo (accessed May 1, 2023). Kaye Decl. ¶ 6. In the video, Mr. Komolafe plays Nash's "Let's Talk" video and provides commentary about the substance of Nash's video. *Id.*

While the Court can view the entirety of Mr. Komolafe's video at the link provided, below Plaintiffs' counsel has transcribed pertinent portions of Nash's apology video:

> Now, a few months ago, I was sponsored by FTX, which means I promoted FTX to everybody who watched my videos; I got paid to say how great they were.
>
> Now, when this whole crisis started, I tried to get off easy, basically saying "well, I only worked with FTX.US and FTX.US is fine, there's no problem with FTX.US." We know now this was a bunch of horseshit, never mind factually incorrect because FTX.US went bankrupt at the same time as FTX.com. Yes, it had withdrawals open for another day, that doesn't really matter.
>
> Beyond the factually incorrect statement, I was trying to get off easy here, basically copping out. Not taking responsibility, and I think it was wrong. I don't think you deserve that from me.
>
> My mistake was that I agreed to work with these guys because I absolutely was blinded or mesmerized or fanboyed by the fact that all of these insane investors are in it, like the Blackrocks, the Sequoias. Because I was looking at this company that had no way for me to verify anything about it, it's a private company, but I was basically saying "look, all these great investors are in it for like billions of dollars, I mean how bad can it be?"
>
> This was a huge mistake. I should have done better. I should have done better due diligence, and if I couldn't do the due diligence I should have just walked away. That's the simple truth that I have to admit to myself and to you, which I haven't so far, but this has to happen.

---

is pending, but also when it reasonably foreseeable to that party." *Title Cap. Mgmt., LLC v. Progress Residential, LLC*, No. 16-21882-CV, 2017 WL 5953428, at *4 (S.D. Fla. Sept. 29, 2017). Plaintiffs will be seeking in discovery, among other things, all videos Defendants produced regarding FTX, including videos that have been removed from their public-facing platforms, as those videos either should still be saved on Defendants' hard drives and preserved for use in this litigation, or should still be on the private-facing portions of their social media platforms—for instance, Defendants could have set a video they posted on YouTube to "private" so it no longer is publicly viewable or searchable but is still posted on their account.

> Now, I also want to come clean as far as how this whole process worked. These guys paid me $50,000—I got about 40 grand because I had to pay 10,000 to the agent[3] or $42,000—per month. That's the month we worked for a month and a couple of weeks, a month and a half.
>
> The idea was that they paid me all this money, and in my head, I'm saying, "you pay me all this money to promote a company that's literally sponsored by Blackrock and Sequoia, Tom Brady's promoting them, they're on an NBA arena and stuff, right? I mean, that's a creator's dream!"
>
> Like this massive brand comes to you and wants to give you $50,000 a month to promote them, to do the same thing that Tom Brady does. I'm not saying that this was right, I'm 100% telling you that this was wrong and I should not have done that. But I am just kind of trying to share with you my perspective of how I saw it back in the day, why I made this horrible mistake.
>
> Because, for me, it's like, look, I got a family. I got kids. I'm trying to put my kids through college, make sure that my family's okay, and somebody comes up and they basically say "well, if you work with us for a whole year, we're going to put all of your kids through college. And we work with Tom Brady, with Steph Curry, and we have Blackrock and Sequoia."
>
> I mean, put yourself in my shoes— would you have considered this? Or would you have said "no, no, no, no, no way."
>
> Obviously I should have said no, but I'm saying see the temptation that they've created for me? And that's why I fucked up.

Kaye Decl. ¶ 7.

Since this action was filed, Plaintiffs have worked to investigate and locate all of the Defendants named in this action. Kaye Decl. ¶ 8. To date, all Defendants named in this action, other than Defendant Nash, have been served within the United States. *Id.*

Plaintiffs also worked to determine whether there are any email addresses for Defendant Nash that could be used to reach out to him, directly. Kaye Decl. ¶ 9. Through this investigation, Plaintiffs' counsel found a Tweet posted by Tom Nash on February 20, 2023, from his Verified Twitter Account (@iamtomnash), in response to an issue raised by one of his followers about using Nash's discount code to sign up for the Stock MVP App, Nash personally responded and said "It sounds like a glitch. Email me at tomnashyt@gmail.com and I'll get it sorted out asap" [sic]. *Id.*

---

[3] On information and belief, "the agent" refers to Defendant Creators Agency LLC.



*Id.* (citing https://twitter.com/iamtomnash/status/1627879022670520320 (accessed May 1, 2023)).

On March 31, 2023, Plaintiffs' counsel emailed tomnashyt@gmail.com with a copy of the Complaint filed in this action, [ECF No. 1], along with a Notice of Commencement of Action and Request for Waiver of Service form. Kaye Decl. ¶ 10 Though Defendant Nash never responded, the email was not kicked back or otherwise returned as undeliverable to that email address. *Id.*

Plaintiffs' investigation revealed that Defendant Nash may be operating under a pseudonym and may be living abroad, although not in Australia, as at least one news article recently published suggested on March 24, 2023. Kaye Decl. ¶ 11. Plaintiffs hired private investigators to determine Tom Nash's real name(s) and to otherwise ascertain his whereabouts. Kaye Decl. ¶ 12.

Their investigation uncovered that (1) Defendant Nash has also gone by the names Tomer Nash, Tomer Levine, and Tomer Mimik; and (2) Defendant Nash currently resides in the country Georgia. Kaye Decl. ¶ 13. Plaintiffs are in the process of ascertaining Defendant Nash's specific address within the country Georgia. *Id.*

Through this investigation conducted by Plaintiffs' counsel and their agents, Plaintiffs have good cause to believe that Defendant Nash is currently residing in and operating his business activities from the country of Georgia. Kaye Decl. ¶ 14. Plaintiffs have determined the acts alleged in the Complaint are most likely based in and/or emanating from Georgia or other foreign jurisdictions. *Id.* Plaintiffs looked at multiple data points, including information contained on Defendant Nash's websites, social media channels, and information obtained from the

investigatory efforts of private investigators hired by Plaintiffs. *Id.* Therefore, Plaintiffs have good cause to believe these Defendant Nash is not a resident of the United States at this time. *Id.*

Without Defendant Nash's specific address in Georgia, though, it will be difficult to serve Defendant Nash through The Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention"), especially within the time period required by the Court's current June 13, 2023 deadline to effect service on all Defendants in this action. Kaye Decl. ¶ 15.

The Hague Convention does not preclude service by e-mail, through social media, or through publication on a website. Kaye Decl. ¶ 16. Additionally, according to Article 1 of The Hague Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known." *Id.* Georgia is a Hague signatory, and does not object to service by email, through social media, or through publication on a website. *Id.*

Email is an available means of serving Defendant Nash. Kaye Decl. ¶ 17. As explained above, Defendant Nash acknowledged his personal email address was tomnashyt@gmail.com in a public Twitter post to one of his followers, and the email Plaintiffs' counsel sent him to that address referenced above was not kicked back or otherwise returned as undeliverable to that email address. *Id.*

Defendant Nash is also able to receive notice of this action through website posting. Kaye Decl. ¶ 18. Plaintiffs' counsel has created a dedicated website, located at https://moskowitz-law.com/ftx-influencers-class-action (the "Service Website"), where Plaintiffs will post copies of the Complaint and all other pleadings, documents, and orders on file in this action, such that anyone accessing the website will find copies of all documents filed in this action. *Id.* The address for this website will be sent to Defendant Nash's acknowledged personal email address and his Verified Twitter Account. *Id.*

Twitter is also an available means of serving Defendant Nash. Kaye Decl. ¶ 19. As shown above, Defendant Nash is extremely active on his Verified Twitter Account (@iamtomnash), where Defendant Nash makes posts on an almost daily basis, and responds to his followers when they tag him in Tweets or respond to his Tweets. *Id.* Plaintiffs' counsel can easily post on The Moskowitz Law Firm Twitter account @Moskowitzesq, and tag Defendant Nash at @iamtomnash, in a Tweet that provides him with a link to the Service Website. *Id.*

## II.      ARGUMENT

Rule 4(f)(3) for the Federal Rules of Civil Procedure (the "Rules") "authorizes a district court to order an alternate method for service to be effected upon foreign defendants provided it is not prohibited by international agreement and is reasonably calculated to give notice to the defendants." *In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 19-21551-CIV, 2019 WL 13062201, at *1 (S.D. Fla. May 14, 2019) (Altonaga, J.) (citing Fed. R. Civ. P. 4(f)(3); *Karsten Mfg. Corp. v. Store*, No. 18-CIV-61624, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (authorizing alternative service of process via e-mail and digital publication); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) ("[D]istrict courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements.") (alteration added) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003))).

Notably, alternative methods of service under Rule 4(f)(3) are available without first attempting service by other means. *Chengdu Jiechen Tech. Ltd. v. Trobing-US*, 21-61020-CIV, 2021 WL 10382802, at *1 (S.D. Fla. Aug. 10, 2021) (Altman, J.) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). "So especially in a circumstance where service upon a foreign [defendant] under Rule 4(f)(1) or 4(f)(2) has been cumbersome, district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service that are consistent with due process and are not prohibited by international agreements." *Id.* (citing *Brookshire Brothers, Ltd. v. Chiquita Brands Int'l, Inc.*, Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (citing *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003))); *see also Karsten Mfg. Corp. v. Store*, No. 18-CIV-61624, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (authorizing alternative service of process via e-mail and digital publication).

Alternative service of process under Rule 4(f)(3) is warranted here.

**<u>First</u>**, service by e-mail, through social media, or through publication on a website is not prohibited under international agreement in this case.

Georgia is a signatory to The Hague Convention, which does not specifically preclude service by e-mail or publication. *See Karsten*, 2018 WL 8060707, at *1. Where a signatory nation has objected to the alternative means of service provided by Section 10 of The Hague Convention,

that objection is expressly limited to those means listed in the objection and does not represent a blanket objection to other forms of service, such as e-mail or publication. *See In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1 (citing *Karsten*, 2018 wl 8060707, at *2 (authorizing service by email and publication); *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv- 20590, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (authorizing service by e-mail)); *see also Chengdu Jiechen Tech. Ltd.*, 2021 WL 10382802, at *1 (authorizing service by e-mail and publication) (citing *Stat Med. Devices, Inc.*, 2015 WL 5320947, at *3). A court acting under Rule 4(f)(3) therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means. *See In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1 (citing *Karsten*, 2018 WL 8060707, at *2 (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011))).

Accordingly, service by e-mail, through social media, or through publication on a website does not violate an international agreement.

**Second**, Plaintiffs' proposed Service Plan is reasonably calculated to give notice to the foreign Defendants.

Federal courts have repeatedly authorized alternative service methods, including service by e-mail and website publication, where a plaintiff demonstrates the likelihood that the proposed alternative method of service will notify a defendant of the pendency of the action. *See, e.g. Rio Props.,* 284 F.3d at 1017 (holding, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable"); *Nat'l Ass'n for Stock Car Auto Racing, Inc. v. Does,* 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) ("acknowledging the realities of the twenty-first century and the information age, the Court determined that the most appropriate place for publication was [plaintiff's website]."); *Popular Enters., LLC v. Webcom Media Group, Inc.,* 225 F.R.D. 560, 562 (E.D. Tenn. 2004) ("Under the facts and circumstances presented here, Rule 4(f)(3) clearly authorizes the court to direct service upon defendant by e-mail. The rule is expressly designed to provide courts with broad flexibility in tailoring methods of service to meet the needs of particularly difficult cases. Such flexibility necessarily includes the utilization of modern communication technologies to effect service when warranted by the facts.") (citation omitted); *In re Int'l Telemedia Assocs., Inc.,* 245 B.R. 713, 721 (N.D. Ga. 2000) ("If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those

communication channels utilized and preferred by the defendant himself must be included among them.").

Furthermore, this Court has frequently authorized foreign service process via e-mail, through Twitter, and through website publication. *See, e.g., In re Farm-Raised Salmon & Salmon Products Antitrust Litig.*, 2019 WL 13062201, at *1; *see also Oueiss v. Al Saud*, 1:20-CV-25022-KMM, 2021 WL 5088942, at *8 (S.D. Fla. Jan. 18, 2021) (collecting cases and authorizing service under Rule 4(f)(3) on various defendants through mail, email, Twitter, publication, and service directed to their "current U.S.-based counsel"); *Chengdu Jiechen Tech. Ltd.*, 2021 WL 10382802, at *1; *Karsten,* 2018 WL 8060707, at *2; *Tiffany (NJ) LLC v. Dorapang Franchise Store,* No.18-cv-61590, 2018 WL 4828430, at *3 (S.D. Fla. July 17, 2018) (authorizing service of process via e-mail and publicly posting copies of the summons, complaint, and all future filings on the internet); *Chanel, Inc. v. Individual, P'ship, or Unincorporated Ass'n,* No. 18-61233-CIV, 2018 WL 7253306, at *1 (S.D. Fla. June 7, 2018) (Dimitrouleas, J.) (authorizing service of process via e-mail and publication where defendant had an internet-based business and utilized e-mail as a reliable form of contact); *Stat Medical Devices, Inc. v. HTL-STREFA, Inc.,* No. 15-20590-CIV, 2015 WL 5320947, at *4 (S.D. Fla. Sept. 14, 2015) (concluding that "service by email on the foreign defendant . . . as well as serving the domestic defendant's attorney is reasonably calculated to notify the foreign defendant of the pendency of this action and provide it with an opportunity to defend").

Plaintiffs have created a dedicated Service Website to post the relevant case materials for the sole purpose of providing notice of this action to the Defendants, the address to which will be provided to not only the Verified Twitter Accounts of Defendant Nash, which he uses on a daily basis, but also to his acknowledged personal email address, tomnashyt@gmail.com, which Plaintiffs' counsel has previously emailed and which emails did not bounce back, evincing that his email is valid and operational and Plaintiffs' counsel's email was delivered. *See U.S. Commodity Futures Trading Com'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011) (Cooke, J.) (finding service by email appropriate where plaintiff's prior email "did not receive any bounce back e-mails to indicate that the messages were not delivered successfully"); *see also Chanel, Inc. v. Zhixian*, 10-CV-60585, 2010 WL 1740695, at *1 (S.D. Fla. Apr. 29, 2010) (Cohn, J.) ("The e-mails were not bounced back nor returned as "undeliverable," thereby demonstrating the e-mails were delivered to Defendant Zhixian and the e-mail addresses are valid and operational.").

Therefore, service via e-mail, through social media, and through publication on the dedicated Service Website is "reasonably calculated, under all circumstances, to apprise [Defendant Nash] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Chengdu Jiechen Tech. Ltd.*, 2021 WL 10382802, at *1 (citing *Brookshire Brothers, Ltd.*, 2007 WL 1577771, at *1). Thus, the Court should exercise its discretion to allow service on Defendant Nash in accordance with Plaintiffs' proposed Service Plan, through e-mail, through social media, and through publication on the dedicated website.

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant this Motion and authorize service of process upon Defendant Tom Nash in this Action in accordance with the following Service Plan:[4]

1. Via website posting by posting a copy of the Complaint and other relevant filings in this matter on the Service Website, located at https://moskowitz-law.com/ftx-influencers-class-action;
2. Via Twitter through posting the URL to the Service Website on The Moskowitz Law Firm Twitter account @Moskowitzesq, and tagging @iamtomnash; and
3. Via email through emailing the Complaint and URL to the Service Website to Defendant Tom Nash to his acknowledged personal email address, tomnashyt@gmail.com.

Should the Court grant this Motion, the Court may wish to hold a status conference, as Defendant Nash is the last Defendant to be served in this action. Plaintiffs will serve notice of such a status conference to these Defendants through the same Service Plan outlined above.

### REQUEST FOR ORAL ARGUMENT

Plaintiffs respectfully request that the Court hear oral argument on this Motion, and respectfully submit that thirty minutes should be sufficient for all Parties.

Dated: May 1, 2023

Respectfully submitted,

By: */s/ Adam Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com

---

[4] A Proposed Order accompanies this Motion as **Exhibit 2**.

Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/Stuart Z. Grossman*
Stuart Z. Grossman
Florida Bar No. 156113
Manuel A. Arteaga-Gomez
Florida Bar No. 18122
**GROSSMAN ROTH YAFFA COHEN, P.A.**
2525 Ponce de Leon Boulevard, Suite 1150
Coral Gables, FL 33134
Ph: 305-442-8666
Fx: 305-285-1668
szg@grossmanroth.com
aag@grossmanroth.com

By: */s/ Stephen Neal Zack*
Stephen Neal Zack
Florida Bar No. 145215
Tyler Ulrich
Florida Bar No. 94705
**BOIES SCHILLER FLEXNER LLP**
100 SE 2nd St., Suite 2800
Miami, FL 33131
Office: 305-539-8400
szack@bsfllp.com
tulrich@bsfllp.com

By: */s/ Jose Ferrer*
Jose Ferrer
Florida Bar No. 173746
Michelle Genet Bernstein
Florida Bar No. 1030736
**MARK MIGDAL HAYDEN LLP**
8 SW 8th Street, Suite 1999
Miami, FL 33130
Office: 305-374-0440
jose@markmigdal.com
michelle@markmigdal.com
eservice@markmigdal.com

*Co-Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed on May 1, 2023, via the Court's CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
ADAM M. MOSKOWITZ