# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 23-21023-CIV-ALTONAGA/Damian**

**EDWIN GARRISON**, *et al.,* on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

**KEVIN PAFFRATH, GRAHAM STEPHAN, ANDREI JIKH, JASPREET SINGH, BRIAN JUNG, JEREMY LEFEBVRE, TOM NASH, BEN ARMSTRONG, ERIKA KULLBERG, CREATORS AGENCY, LLC,**

    Defendants.
_____/

**DECLARATION OF JOSEPH M. KAYE IN SUPPORT OF PLAINTIFFS' MOTION TO SERVE DEFENDANT TOM NASH WITH PROCESS THROUGH ALTERNATE MEANS**

I, Joseph M. Kaye, declare and state as follows:

1. I am a Partner at The Moskowitz Law Firm, PLLC, and am an attorney duly authorized and licensed to practice before all courts in the States of Florida and North Carolina, in the United States District Courts for the Southern, Middle, and Northern Districts of Florida, and the Eleventh Circuit Court of Appeals. I am one of the counsel of record for Plaintiffs in the above-referenced action. I submit this Declaration in support of Plaintiffs' Motion to Serve Defendant Tom Nash with Process Through Alternate Means (the "Motion"). I am personally knowledgeable of the matters set forth in this Declaration and, if called upon to do so, I could and would competently testify to the following facts set forth below.

2. Defendant Tom Nash is a financial "Influencer" whose business revolves around making and posting videos online to promote products, like the unregistered FTX offerings at issue in this lawsuit, to his hundreds of thousands of followers. Nash describes himself on his Verified Twitter Account, @iamtomnash, which has over 72,000 followers, as "Father, Husband, Basketball Junkie. Michigan Alum (Go Blue). Former Deloitte Senior Manager. If my profile doesn't have a blue check mark it's 100% fake!" Nash has posted over 7,200 tweets on this

account, including a video at 7:07am on May 1, 2023, about JPMorgan Chase's takeover of First Republic Bank.



See https://twitter.com/iamtomnash (accessed May 1, 2028); *see also* https://twitter.com/iamtomnash/status/1652993024631136259 (accessed May 1, 2023).

3.      According to his primary Verified YouTube Account, @TomNashTV, which has over 284,000 followers, "Tom Nash provides opinions on the stock market, the economy and financial news. Please consider subscribing for honest and independent financial news and educational content. Views expressed in all videos are merely Tom's own opinions." Nash's primary YouTube account advertises as posting "DAILY FINANCE VIDEOS" and has at the time of this declaration his videos on his channel have collectively amassed 33,913,122 views since it was established on August 15, 2017.



*See* https://www.youtube.com/@TomNashTV/about (accessed May 1, 2023).

4.      On November 13, 2022, shortly after FTX collapsed and filed for bankruptcy, Tom Nash posted a "mea culpa" video on his YouTube channel, explaining that he wanted to "come clean" to his followers about his promotion of FTX and its products. In the video, titled "Let's Talk," Nash apologizes to his followers for his role in promoting FTX and its unregistered offerings, making a number of admissions, including disclosing how much he had apparently been paid by FTX.

5.      It appears that Nash deleted "Let's Talk" from his channels.

6.      Fortunately for Plaintiffs and the Court, however, Peter Komolafe, a "Financial Adviser turned Youtuber" based in the United Kingdom, livestreamed a video on November 13, 2022, titled "HE GOT PAID 50K A MONTH TO PROMOTE FTX – This is his apology," accessible at https://www.youtube.com/watch?v=SBzcEpfUpQo (accessed May 1, 2023). In the

video, Mr. Komolafe plays Nash's "Let's Talk" video and provides commentary about the substance of Nash's video.

7.  While the Court can view the entirety of Mr. Komolafe's video at the link provided, below I have transcribed pertinent portions of Nash's apology video:

> Now, a few months ago, I was sponsored by FTX, which means I promoted FTX to everybody who watched my videos; I got paid to say how great they were.
>
> Now, when this whole crisis started, I tried to get off easy, basically saying "well, I only worked with FTX.US and FTX.US is fine, there's no problem with FTX.US." We know now this was a bunch of horseshit, never mind factually incorrect because FTX.US went bankrupt at the same time as FTX.com. Yes, it had withdrawals open for another day, that doesn't really matter.
>
> Beyond the factually incorrect statement, I was trying to get off easy here, basically copping out. Not taking responsibility, and I think it was wrong. I don't think you deserve that from me.
>
> My mistake was that I agreed to work with these guys because I absolutely was blinded or mesmerized or fanboyed by the fact that all of these insane investors are in it, like the Blackrocks, the Sequoias. Because I was looking at this company that had no way for me to verify anything about it, it's a private company, but I was basically saying "look, all these great investors are in it for like billions of dollars, I mean how bad can it be?"
>
> This was a huge mistake. I should have done better. I should have done better due diligence, and if I couldn't do the due diligence I should have just walked away. That's the simple truth that I have to admit to myself and to you, which I haven't so far, but this has to happen.
>
> Now, I also want to come clean as far as how this whole process worked. These guys paid me $50,000—I got about 40 grand because I had to pay 10,000 to the agent[1] or $42,000—per month. That's the month we worked for a month and a couple of weeks, a month and a half.
>
> The idea was that they paid me all this money, and in my head, I'm saying, "you pay me all this money to promote a company that's literally sponsored by Blackrock and Sequoia, Tom Brady's promoting them, they're on an NBA arena and stuff, right? I mean, that's a creator's dream!"
>
> Like this massive brand comes to you and wants to give you $50,000 a month to promote them, to do the same thing that Tom Brady does. I'm not saying that this was right, I'm 100% telling you that this was wrong and I should not have done

---

[1] On information and belief, "the agent" refers to Defendant Creators Agency LLC.

that. But I am just kind of trying to share with you my perspective of how I saw it back in the day, why I made this horrible mistake.

Because, for me, it's like, look, I got a family. I got kids. I'm trying to put my kids through college, make sure that my family's okay, and somebody comes up and they basically say "well, if you work with us for a whole year, we're going to put all of your kids through college. And we work with Tom Brady, with Steph Curry, and we have Blackrock and Sequoia."

I mean, put yourself in my shoes— would you have considered this? Or would you have said "no, no, no, no, no way."

Obviously I should have said no, but I'm saying see the temptation that they've created for me? And that's why I fucked up.

8. Since this action was filed, Plaintiffs have worked to investigate and locate all of the Defendants named in this action. To date, all Defendants named in this action, other than Defendant Nash, have been served within the United States.

9. Plaintiffs also worked to determine whether there are any email addresses for Defendant Nash that could be used to reach out to him, directly. Through this investigation, I found a Tweet posted by Tom Nash on February 20, 2023, from his Verified Twitter Account (@iamtomnash), in response to an issue raised by one of his followers about using Nash's discount code to sign up for the Stock MVP App, Nash personally responded and said "It sounds like a glitch. Email me at tomnashyt@gmail.com and I'll get it sorted out asap" [sic].



5

*See* https://twitter.com/iamtomnash/status/1627879022670520320 (accessed May 1, 2023).

10. On March 31, 2023, I emailed tomnashyt@gmail.com with a copy of the Complaint filed in this action, [ECF No. 1], along with a Notice of Commencement of Action and Request for Waiver of Service form. *See* **Exhibit A**. Though Defendant Nash never responded, the email was not kicked back or otherwise returned as undeliverable to that email address.

11. Plaintiffs' investigation revealed that Defendant Nash may be operating under a pseudonym and be living abroad, although not in Australia, as at least one news article recently published suggested on March 24, 2023.[2]

12. Plaintiffs hired private investigators to determine Tom Nash's real name(s) and to otherwise ascertain his whereabouts.

13. Their investigation uncovered that (1) Defendant Nash has also gone by the names Tomer Nash, Tomer Levine, and Tomer Mimik; and (2) Defendant Nash currently resides in the country Georgia. Plaintiffs are in the process of ascertaining Defendant Nash's specific address within the country Georgia.

14. Through this investigation conducted by Plaintiffs' counsel and their agents, Plaintiffs have good cause to believe that Defendant Nash is currently residing in and operating his business activities from the country of Georgia. Plaintiffs have determined the acts alleged in the Complaint are most likely based in and/or emanating from Georgia or other foreign jurisdictions. Plaintiffs looked at multiple data points, including information contained on Defendant Nash's websites, social media channels, and information obtained from the investigatory efforts of private investigators hired by Plaintiffs. Therefore, Plaintiffs have good cause to believe these Defendant Nash is not a resident of the United States at this time.

15. Without Defendant Nash's specific address in Georgia, though, it will be difficult to serve Defendant Nash through The Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Convention"), especially within the time period required by the Court's current June 13, 2023 deadline to effect service on all Defendants in this action.

16. The Hague Convention does not preclude service by e-mail, through social media, or through publication on a website. Additionally, according to Article 1 of The Hague

---

[2] https://www.afr.com/technology/aussie-youtube-crypto-star-caught-up-in-ftx-class-action-20230317-p5ct2s (accessed May 1, 2023)

Convention, "[the] convention shall not apply where the address of the person to be served with the document is not known." Attached hereto and incorporated herein as **Composite Exhibit G** is a true and correct copy of The Hague Convention and a list of the signatory Members. Georgia is a Hague signatory and does not object to service by email, through social media, or through publication on a website. *Id.*

17. Email is an available means of serving Defendant Nash. As explained above, Defendant Nash acknowledged his personal email address was tomnashyt@gmail.com in a public Twitter post to one of his followers, and the email I sent him to that address referenced above was not kicked back or otherwise returned as undeliverable to that email address.

18. Defendant Nash is also able to receive notice of this action through website posting. Plaintiffs' counsel has created a dedicated website, located at https://moskowitz-law.com/ftx-influencers-class-action (the "Service Website"), where Plaintiffs will post copies of the Complaint and all other pleadings, documents, and orders on file in this action, such that anyone accessing the website will find copies of all documents filed in this action. The address for this website will be sent to Defendant Nash's acknowledged personal email address and his Verified Twitter Account.

19. Twitter is also an available means of serving Defendant Nash. As shown above, Defendant Nash is extremely active on his Verified Twitter Account (@iamtomnash), where Defendant Nash makes posts on an almost daily basis, and responds to his followers when they tag him in Tweets or respond to his Tweets. Plaintiffs' counsel can easily post on The Moskowitz Law Firm Twitter account @Moskowitzesq, and tag Defendant Nash at @iamtomnash, in a Tweet that provides him with a link to the Service Website.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 1, 2023 in Miami, Florida.

By: *[signature]*
Joseph M. Kaye

# Exhibit A

| | |
|---|---|
| **From:** | Joseph Kaye |
| **To:** | tomnashyt@gmail.com |
| **Cc:** | Adam Moskowitz; Rejane Passos; dboies@bsfllp.com; aboies@bsfllp.com; Jose Ferrer; Michelle Genet Bernstein; Stuart Grossman; Alex Arteaga-Gomez; Stephen N. Zack |
| **Subject:** | Re: Garrison, et al. v. Paffrath, et al. - No. 1:23-cv-21023-CMA - Request for Waiver of Service - Tom Nash |
| **Date:** | Friday, March 31, 2023 12:29:05 AM |
| **Attachments:** | 2023.03.31 - TOM NASH - Garrison v. Paffrath - Waiver Return.pdf |
| | Garrison v. Paffrath - 23-cv-21023 - D.E. 1 - Complaint.PDF |
| | 2023.03.31 - TOM NASH - Garrison v. Paffrath - Waiver Request.pdf |

Good evening, Mr. Nash,

We represent Plaintiffs and the putative classes in the above-reference action. A copy of the operative complaint is attached. I am reaching out to you with a Notice of Commencement of Action and Request for Waiver of Service (both forms attached). Please sign, date, and return the waiver so we may proceed with the litigation. Thank you.

Best,

Joseph M. Kaye, P.A.
Partner
**The Moskowitz Law Firm, PLLC**
P.O. Box 141609
Coral Gables, FL 33114
*For Hand Deliveries Use:*
251 Valencia Ave #141609
Coral Gables, FL 33114
Office: (305) 740-1423
Direct: (786) 309-9585

Note: The information in this email is confidential and intended to be legally privileged. If you are not the intended recipient, you must not read, use or disseminate the information contained herein; please advise the sender immediately by reply email and delete this message and any attachments without retaining a copy. Although this email and any attachments are believed to be free of any viruses or other defects that may affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus-free and no responsibility is accepted by The Moskowitz Law Firm or the sender of this email for any loss or damage arising in any way from its use.

CIRCULAR 230 DISCLAIMER: The IRS now requires written advice (including electronic communications) regarding one or more Federal (i.e., United States) tax issues to meet certain standards. Those standards involve a detailed and careful analysis of the facts and applicable law which we expect would be time consuming and costly. We have not made and have not been asked to make that type of analysis in connection with any advice given in this e-mail. As a result, we are required to advise you that any Federal tax advice

rendered in this e-mail is not intended or written to be used and cannot be used for the purpose of avoiding penalties that may be imposed by the IRS.